### LEVY v. GIÁNGROSSO

---

(December 12, 1927. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest — Appeal — Par. 625; Evidence—Par. 351.**
   Only question of fact is involved and the judgment of the trial court is amended because the preponderance of the evidence supports plaintiff's entire claim.

Appeal from Civil District Court, Division "D". Hon. Porter Parker, Judge.

Action by Leon Levy against Paul Giangrosso.

There was judgment for defendant and plaintiff appealed.

Judgment affirmed.

E. V. Provensal, of New Orleans, attorney for plaintiff, appellant.

P. E. Edrington, Jr., of New Orleans, attorney for defendant, appellee.

JONES, J. Plaintiff sues to recover the sum of one thousand four hundred ten and 29-100 ($1410.29) dollars on an open account, of which amount five hundred seventy-five and 79-100 ($575.79) dollars is admitted by defendant.

The amount in dispute, therefore, is eight hundred thirty-five and 50-100 ($835.50) dollars, covering the sale of the following items by plaintiff to defendant on July 24th, 1924:

300 pairs Mooney's Men Full Soles
   @ 42½ _____$127.50
73¾ gross Men's Asst. Heels—885
   dozen @ 80 cts. dozen_____ 708.00
                                      ————————
Total _____$835.50

Defendant denies having purchased this quantity of merchandise and states that he only purchased from a representative of plaintiff, who had called at his place of business, 3234 Magazine street, ten gross of rubber heels in assorted sizes and colors at eighty cents per dozen, but that plaintiff had delivered to him sixty-three gross rubber heels, all black, not assorted sizes, and that he, upon discovery of the fact that sixty-three gross had been delivered, phoned immediately to plaintiff and tendered back fifty-three gross; that this offer was refused and he now has fifty-three gross of rubber heels at plaintiff's risk. Nothing was said as to soles.

Judgment was for plaintiff in the sum of seven hundred ninety-eight and 29-100 ($798.29) dollars, with legal interest from date of judicial demand until paid, and costs, which judgment included the five hundred seventy-five and 59-100 ($575.59) dollars admitted as due and owing, and also for three hundred pairs of soles at 42½ cents a pair and ten gross heels (or one hundred twenty dozen) at eighty cents per dozen.

Plaintiff appealed and asks for judgment in the full amount sued for.

There is nothing before this court, except the question of fact as to whether defendant purchased seventy-three and three-fourths gross of rubber heels as alleged by plaintiff, or only ten gross as alleged by defendant.

Plaintiff, a wholesale shoe finding merchant, swears that defendant, who runs a shoe repairing shop, came to his store late on the afternoon of July 23rd, 1924; that he offered to sell him three hundred pairs of men's full soles at 42½ cents per pair and a job lot of rubber heels, about seventy-five gross, exact number not definitely fixed, at eighty cents per dozen, although these heels had never brought less than a dollar per dozen, provided he would take both the soles and the heels; that, after some bickering defendant accepted the offer and the next day the heels were counted and boxed and the exact amount found to be seventy-three and three-fourths gross, or eight hundred and eighty-five dozen; on the second morning the soles and heels were sent to defendant's place in two loads; that his drayman had telephoned him after delivery of second load that defendant refused to sign the dray receipt on the ground that he had not ordered so many heels; that he had told drayman to wait at defendant's store until he consulted his attorney, as he was not willing to sell the soles and only a part of the heels at the reduced price; that later he had phoned his drayman to leave all the heels there at defendant's store and return with unsigned dray receipt; that he had told defendant that the heels were all men's heels and mostly black and mostly of one size and that they had been in his store about two years and that defendant saw the heels and knew that he was getting the reduced price because it was old stock; that his clerk, his stenographer and two customers were in the store at the time of the sale and he had shown defendant a list of the different boxes or cartons of heels, which filled some two typewritten pages in a memorandum book; he had told defendant that he did not know the exact amount, but that it was around seventy-five gross; that defendant said nothing about ten gross at the time; that he had taken no written order at the time, as he had dealt with defendant before and it was not his custom to take written orders in such cases.

James Harris, the colored porter and clerk, who had been working for plaintiff for twenty-seven years, confirmed plaintiff in practically all substantial details as to the sale and as to the packing and shipment.

John Murphy, the drayman, confirmed plaintiff as to delivery and as to refusal of defendant to sign the dray receipt after all the heels were placed in his store and also as to his telephone instructions from plaintiff when this unexpected impasse was developed.

He further swore that he had taken the soles and thirty gross on the first load and that defendant had helped to receive them without protest and, in fact, seemed entirely satisfied until he was presented with a bill and the dray receipt.

Defendant admits going to plaintiff's store at the time stated and buying the soles and a job lot of rubber heels; he was shown at the time a book in which Mr. Levy had an inventory of the rubber heel stock and which he understood did not exceed ten gross and had agreed to buy the whole lot at the reduced price of eighty cents per dozen; that he had complained to the driver when the first load was delivered and that the driver

had then said a second larger load was yet to come; when the second load came he had refused to accept them and driver had called up plaintiff for instructions and was told to leave them there any way; that he had vainly tried then to talk to Mr. Levy; that he operated a small repair shop and could not use all these heels in five years, as they were all of one size, color and variety; rubber would become hard in two or three years and the heels could not be used; that he had formerly run three stores and had then bought as much as twenty-five gross, but that a purchase of seventy-three and three-fourths gross would be ridiculous; that Levy had first wanted ninety cents per dozen and had then come down to eighty cents on his agreement to take the whole lot; that he had been shown a list of rubber heels in a book by Levy, but not the one in court; that he had sold a couple of dozen to his cousin and had put the heels out in the open yard with no protection.

Jos. Montegut swears he was working for defendant when heels were delivered; that defendant wouldn't take the second load and driver wouldn't take them back; that defendant told him he had ordered about a thousand pairs; that defendant rang up plaintiff and was unable to talk to him.

Ceravalo, who runs an electric shoe repair shop, swore that the heels were old and he couldn't use them in less than four or five years; that some time before he had gone in with defendant and bought twenty gross from Levy.

Zito, who also runs an electric shoe repair shop, swears that rubber heels, after three years, wouldn't be much good; that it would take four or five years to use up seventy-three gross; that he had bought seven dozen of these heels from defendant,

of three sizes, nine, eleven and seven; that Levy had sold him some of these heels at a dollar per dozen.

Above digest shows that defendant called at plaintiff's store and made the purchase from plaintiff, though he had made a different statement in his answer; that seventy-three and three-fourths gross had been delivered and not sixty-three, as alleged in the answer. Therefore, defendant should have offered to return sixty-three gross, if he had ordered only ten gross, and not fifty-three gross.

As defendant admits that the low price had been offered on condition of his taking the whole lot, he should have sent back the entire lot, when he found the amount larger than expected; he could not keep what he wanted at the reduced price and only reject the balance without violating the essence of the agreement.

Furthermore, defendant has made it impossible to return the heels to defendant as he has sold and used some and thrown the others in the yard, where they have doubtless long since gone to ruin. Defendant should have refused to accept more than ten dozen at once and should never have allowed the second load to be brought to his place, and, if brought, under no circumstances should they have been placed in his store. They should have been kept in a safe place pending a decision on the matter.

The evidence shows he helped to unload them and made no protest until delivered.

Although both defendant and his two shoe-repairing friends testify that the purchase of so large an amount of rubber heels was absurd and ridiculous, the temptation of a bargain is to many of us well nigh irresistible, as the genial Goldsmith has so well shown in his immortal story of Moses and the green spectacles.

For the above reasons the judgment is affirmed.

It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Leon Levy, and against defendant, Paul Giangrosso, in the full sum of one thousand four hundred ten and 29-100 ($1410.29) dollars with legal interest from judicial demand until paid and all costs.